Kenneth H. Brown (CA Bar No. 100396)
Miriam Manning (CA Bar No. 178584)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, California 94111-4500
Telephone: 415/263-7000
Facsimile: 415/263-7010

E-mail: kbrown@pszjlaw.com
 mmanning@pszjlaw.com

Counsel for E. Lynn Schoenmann,
Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>REALTYSHARES, INC.<br><br>Debtor. | Case No.: 20-30621<br><br>Chapter 7<br><br>**SUPPLEMENTAL DECLARATION OF LOREN KIEVE IN SUPPORT OF TRUSTEE'S APPLICATION FOR ORDER APPROVING EMPLOYMENT OF KIEVE LAW OFFICES AS SPECIAL LITIGATION COUNSEL**<br><br>[No Hearing Required] |

I, Loren Kieve, declare as follows:

1. I am the principal of the Kieve Law Offices (the "**Firm**"). I am an attorney-at-law, duly admitted and in good standing to practice in California. I submit this Declaration in support of the application (the "**Application**") of E. Lynn Schoenmann, chapter 7 trustee ("**Trustee**") *for Order Approving the Employment of Kieve Law Offices as Special Litigation Counsel*.[1]

2. On Friday, September 17, 2021 at 10:30 AM the Court conducted a hearing on the Application to address the following ambiguities or issues it noted in the Agreement: (i) the circumstances under which the Secured Creditor would receive a distribution from the Gross Recovery (clarified in the revised Agreement), (ii) the present value calculation (removed from the revised Agreement), (iii) allowance of block billing (removed from the revised Agreement), (iv)

---
[1] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Application.

award of attorney's fees to prevailing parties (removed from the revised Agreement), and (v) the Firm's ability to withdraw from the representation (revised to require Bankruptcy Court approval).

3. The Agreement has been revised to address each of this issues and to further clarify the circumstances under which the Firm would be entitled to recover a 40% Percentage Contingency Fee and that the services to be provided by the Firm will not include the prosecution of preferential transfer claims.

4. The revised Agreement, dated September 21, 2021, is attached hereto as **Exhibit A**.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 21st day of September, 2021, at ~~San Francisco,~~ Boston, Mass California.

/s/ Loren Kieve
Loren Kieve

DOCS_SF:106008.4 77355/001

# EXHIBIT A

(Revised Agreement)

**Kieve | Law Offices**

2655 Steiner Street
San Francisco, California 94115
www.kievelaw.com

Telephone: 415.364.0060
Conference: 866.384.2318

Loren Kieve
lk@kievelaw.com
Cell: 415.425.2655

September 21, 2021

*By e-mail*

E. Lynn Schoenmann
35 Miller Avenue #298
Mill Valley CA 94941
lschoenmann@earthlink.net

*In re RealtyShares, Inc., Chapter 7, Case No. 20-30621*
*United States Bankruptcy Court for the Northern District of California*

Dear Lynn:

This agreement ("Agreement") describes the terms of the engagement of Kieve Law Offices and Loren Kieve (sometimes, "KL," "lawyers," "we," or "us"), as special counsel, by you as client in your capacity as the trustee ("Trustee") for the Chapter 7 Estate of RealtyShares, Inc. (the "Estate") pending in the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court").

**SCOPE OF ENGAGEMENT**

We will represent you in your capacity as Trustee in connection with claims against various entities related to RealtyShares, Inc., including but not limited to, IIRR Management Services, Inc., RealtyShares Manager LLC, RS Lending, Inc., and Realty Shares Securities LLC (referred to herein as the "Claims"). By way of clarification, this engagement does not include the filing of claims to avoid preferential transfers.

This engagement will include tasks that in our judgment are necessary to analyze, investigate, and pursue the Claims in order to obtain a recovery for the Estate, including, development of the Claims, filing an adversary proceeding in the Bankruptcy Court (or a complaint in another court as appropriate), discovery, motion practice, other pretrial work, any settlement negotiations, any appeals, a trial or arbitration hearing if necessary and any work

required to collect upon judgments. The work we have agreed to perform is referred to herein as the "Matter" or "Engagement."

The services to be provided by us in connection with the Engagement will encompass those legal services that (i) are normally and reasonably associated with such an engagement, (ii) are consistent with our ethical obligations, and (iii) we are able, have been requested, and have agreed to provide.

"Gross Recovery" means the fair value of all monetary consideration received by the Estate in connection with any settlement, judgment, award, or other recovery related to the Claims and the value of any reduction of the Secured Claim defined below. If no actual monetary recovery is obtained and paid to the Estate in connection with the Claims, KL shall not be paid a Contingency Fee, irrespective of whether the Secured Claim is reduced.

"Secured Claim" means Claim No. 13 filed by TPC Note Acquisition, LLC in the stated amount of $4,984,701, including any amended claim relating to this claim.

"Secured Creditor" means TPC Note Acquisition, LLC or any party that takes the Secured Claim by assignment.

**FEES**

In consideration for our services on this matter, we shall be paid a contingency fee based on: (i) the time expended by Mr. Kieve at his hourly rate of $900 along with any reasonable and necessary expenses ("Hourly Contingency Fee"); (ii) plus, an additional percentage fee of 33.33% of the Gross Recovery if the Gross Recovery is obtained by way of settlement or 40% of the Gross Recovery if the Gross Recovery is obtained by any other form of resolution resulting in a judgment, for example, summary judgment or judgment resulting from a contested hearing or trial ("Percentage Contingency Fee").  The Hourly Contingency Fee and Percentage Contingency Fee are collectively referred to as the "Contingency Fee" and will be paid in accordance with the following "waterfall":

1. First, payment of the allowed the Secured Claim (in full or as it may be reduced by agreement or  order of the Bankruptcy Court) to the extent the actual funds or property received by the estate  constitutes the Secured Creditor's collateral;
2. Second, payment of all chapter 7 administrative expenses including the Hourly Contingency Fee incurred by KL;
3. Third, payment of allowed priority claims in full;
4. Fourth, distribution of 20% to holders of allowed general unsecured claims; and
5. Fifth, 20% of any remaining Gross Recovery to be distributed to the holders of allowed general unsecured claims as an additional distribution and 80% to KL on account of its percentage contingency fee which will be capped at 33.33% or 40% of the Gross Recovery depending on whether the Gross Recovery obtained through settlement or any other form of resolution resulting in a judgment, for example, summary judgment or judgment resulting from a contested hearing or trial.

      This fee arrangement is not set by law but is the product of negotiation between the parties. In connection with its request for reimbursement of its Hourly Contingency Fees, KL will comply with the United States Trustee's *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330,* including preparing time entries in periods of tenths of an hour with each service showing in a separate time entry.

**DOCUMENT RETENTION, PRODUCTION AND REVIEW**

      You will be responsible for providing us with all documents, including information stored electronically, relevant to any matter for which we are engaged. Even if there is in effect a document retention policy that might result in the scheduled destruction or discarding of documents that could be relevant to litigation or arbitration, you will not destroy or discard any possibly relevant document without consulting us first. You expressly represent that you are not aware of any relevant document, electronically stored information, evidence, or other item that has been intentionally destroyed, deleted, or discarded.

**COSTS AND EXPENSES**

      We will advance any reasonable and necessary costs, expenses and fees for other services incurred in connection with our representation, regardless of the outcome of the Claims. Our expenses may include, but are not limited to, court fees, service-of-process charges, photocopies, computer-assisted legal research, long distance telephone and telecopy charges, messenger and delivery fees, court reporter fees, travel, meals, hotel, and messenger/overnight delivery charges. Expenses may also include charges billed by outside service providers that are not "professionals" ("Non-Professional Service Providers"), such as a court-reporting firm, Electronically Stored Information ("ESI") or document production company, as well as the services of expert witnesses and trial consultants.

      You agree to reimburse us for all costs reasonably incurred during this Engagement from the proceeds of the Gross Recovery pursuant to the terms of the "waterfall" described above. In the event no Gross Recovery is obtained, the Estate shall not be obligated to reimburse costs and expenses. We will itemize all expenses incurred on our bills. Back up receipts will be provided upon request.

**SETTLEMENT**

      We will communicate any settlement proposal made by defendants to you and will also seek your approval before making any settlement proposals to defendants. You have the absolute right to accept or reject any settlement proposal. We will not settle the Claims without your approval. We understand and acknowledge that any settlement of the Claims is subject to the approval of the Bankruptcy Court.

**CHOICE OF LAW**

      California law (without regard to its choice of laws principles) will govern any dispute or claim related to or arising out of this Agreement, whether in arbitration or in the courts.

**BANKRUPTCY COURT JURISDICTION**

The Bankruptcy Court shall have jurisdiction to resolve any dispute, claim or controversy arising out of or relating to this Engagement or Agreement (including without limitation disputes over the services we performed, fees and alleged malpractice).

**NO PROMISES REGARDING OUTCOME OF ACTION**

In the course of the representation, we may discuss with you the status or potential outcome of the Claims. We cannot promise or guarantee any particular outcome or result due to variables and uncertainties outside our control. Therefore, you should not construe any expressions of opinions on such matters or issues as assurances, promises or guarantees of the potential outcome of the Claims.

**ETHICS COUNSEL**

KL represents other clients and handles a number of complex matters each year. In part because of the clients that KL represents and the complexity of the matters we become involved in, from time-to-time issues arise that raise questions as to our duties under the professional conduct rules that apply to lawyers. These might include, e.g., conflict of interest issues, and could even include issues raised because of a dispute between us and a client over the handling of a matter. We believe that it is in our clients' interest, as well as KL's interest, that if legal ethics or related issues arise during a representation, we will receive expert analysis of our obligations. Therefore, when such questions arise, we sometimes seek the advice of outside ethics counsel ("ethics counsel"). You and we agree that the consultation of firm personnel with ethics counsel are attorney-client privileged communications. As a consequence, in the event of a dispute between you and KL, you may be unable to obtain discovery from KL concerning such communications. You and we agree that, in the event that firm personnel consult with ethics counsel regarding our representation of you, KL may continue to represent you and our continued representation of you shall not waive the attorney-client privilege over consultations between firm personnel and ethics counsel.

**WORK PRODUCT**

You understand that we maintain our files electronically. We will use our professional judgment in determining what pleadings and other documents to save, and how long to save them. At the conclusion of this Matter, you may request the file from us within sixty (60) days. We reserve the right to destroy all or parts of the file without notice to you if such a request is not made.

Trustee and we agree not to waive any privilege that may apply to such materials, including the work product and attorney-client privilege, without your and our permission.

**DIGITAL FILE MAINTENANCE**

During our representation, we will be sending you copies of all important contracts, pleadings, letters, notices, and other material that we believe you should review. We strive to maintain these documents in digital (paperless) format, so more often these copies will be in digital format for ease of retention and portability. You should have a secure place to keep these documents. If you need additional paper copies, we can make those at your expense for reasonable copy fees or cooperate in sending the data to the secure copy service of your choice. You may control these costs by keeping digital copies. If you believe your particular file requires encryption, you should advise us of the form of encryption. If we are required to secure encryption software specifically for your case, you will advance the cost of that software.

**CONSENT TO USE OF E-MAIL AND CLOUD SERVICES**

In order to provide you with efficient and convenient legal services, we will frequently communicate and transmit documents using e-mail. Because e-mail continues to evolve, there may be risks communicating in this manner, including risks related to confidentiality and security. By entering into this Agreement, you are consenting to such e-mail transmissions with you and your representatives and agents. In addition, we use a cloud computing service with servers located in a facility other than our office. Most of our electronic data, including emails and documents, are stored in this manner. By entering into this Agreement, you understand and consent to having communications, documents and information pertinent to this matter stored through such a cloud-based service.

**TERMINATION AND CONCLUSION OF REPRESENTATION**

You are entitled to terminate this Engagement at any time by written notice effective when we receive it. We will then provide no further services on your behalf if we receive such notice unless we agree otherwise in writing or are ordered to perform further work by a court of competent jurisdiction or an arbitrator.

In addition, we reserve the right to withdraw from representing the Estate after obtaining an order approving the withdrawal from the Bankruptcy Court.  For example, subject to the approval of the Bankruptcy Court, we  may withdraw if we determine that your conduct has made it unreasonably difficult for us to carry out our representation effectively, or circumstances arise that make KL's  representation of you impractical.

In the event you terminate this Agreement without wrongful conduct by us that would cause us to forfeit any fee, or if we withdraw from this Engagement, we may ask the Bankruptcy Court to order you to pay us a fee based on the reasonable value of our services. Any such fee shall be payable only out of the actual recovery obtained by you in this Matter. The amount of such fee shall not be greater than the fee that we would have earned if the Contingency Fee described above in this Agreement had been paid.

**INTEGRATION**

This Agreement constitutes the entire, final, and binding agreement between us and you, and may only be modified in a writing signed by all parties.

**WAIVER OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 6148**

To the extent that the terms of our fee agreement may be deemed not to comply with the provisions of § 6148 of the California Business and Professions Code on legal fees and other charges, you hereby expressly agree to waive the requirements of that section. The full text of § 6148 can be found at the end of this letter.

**SEVERABILITY**

If any provision of this Agreement is held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire Agreement will be severable and remain in effect.

**CLIENT'S ACKNOWLEDGMENT**

You acknowledge that we have encouraged you to consult independent counsel concerning the negotiation of this Agreement and its terms that you have made sufficient investigation and inquiry to determine that this Agreement is fair and reasonable, and that this agreement was the product of arm's-length negotiation with us. You represent and warrant to us that you have either consulted such independent counsel or, having had an adequate opportunity to seek such advice, have declined to follow our advice that you do so.

We discuss the terms and conditions of our engagement so candidly because we believe that you are entitled to know our policies and that this type of frank discussion will avoid any misunderstandings later. Please sign a copy of this Agreement in the corresponding space provided below indicating agreement to the terms and conditions set forth above. We will commence our representation in this matter upon receipt of this Agreement signed by you and Bankruptcy Court approval of the Agreement.

If these terms and conditions are acceptable, please sign the enclosed copy of this letter in the space below.

Sincerely,

Loren Kieve

cc: Kenneth Brown
 (General Counsel to the Trustee)

SUBJECT TO COURT APPROVAL, AGREED:

ESTATE OF REALTYSHARES, INC.

By:_____
    E. Lynn Schoenmann
    Chapter 7 Trustee

## *California Business and Professions Code § 6148*

(a) In any case not coming within Section 6147 in which it is reasonably foreseeable that total expense to a client, including attorney fees, will exceed one thousand dollars ($1,000), the contract for services in the case shall be in writing. At the time the contract is entered into, the attorney shall provide a duplicate copy of the contract signed by both the attorney and the client, or the client's guardian or representative, to the client or to the client's guardian or representative. The written contract shall contain all of the following:

(1) Any basis of compensation including, but not limited to, hourly rates, statutory fees or flat fees, and other standard rates, fees, and charges applicable to the case.

(2) The general nature of the legal services to be provided to the client.

(3) The respective responsibilities of the attorney and the client as to the performance of the contract.

(b) All bills rendered by an attorney to a client shall clearly state the basis thereof. Bills for the fee portion of the bill shall include the amount, rate, basis for calculation, or other method of determination of the attorney's fees and costs. Bills for the cost and expense portion of the bill shall clearly identify the costs and expenses incurred and the amount of the costs and expenses. Upon request by the client, the attorney shall provide a bill to the client no later than 10 days following the request unless the attorney has provided a bill to the client within 31 days prior to the request, in which case the attorney may provide a bill to the client no later than 31 days following the date the most recent bill was provided. The client is entitled to make requests at intervals of no less than 30 days following the initial request. In providing responses to client requests for billing information, the attorney may use billing data that is currently effective on the date of the request, or, if any fees or costs to that date cannot be accurately determined, they shall be described and estimated.

(c) Failure to comply with any provision of this section renders the agreement voidable at the option of the client, and the attorney shall, upon the agreement being voided, be entitled to collect a reasonable fee.

(d) This section shall not apply to any of the following:

(1) Services rendered in an emergency to avoid foreseeable prejudice to the rights or interests of the client or where a writing is otherwise impractical.

(2) An arrangement as to the fee implied by the fact that the attorney's services are of the same general kind as previously rendered to and paid for by the client.

(3) If the client knowingly states in writing, after full disclosure of this section, that a writing concerning fees is not required.

(4) If the client is a corporation.

(e) This section applies prospectively only to fee agreements following its operative date.

(f) This section shall become operative on January 1, 2000.